ATCHISON-ELY v. THOMAS et al.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

PARTNERSHIP—EVIDENCE—CONTRACT—PARTIES.

　　In an action against T. and G. as partners it appeared that the owner of an opera hired plaintiff to sing for a specified time, and that after the making of such contract T. told the owner of the opera that he wanted to buy it, and that he intended to do so, and to give to G. an interest in it, and that subsequently a written contract under seal was executed, whereby the owner of the opera transferred the same to G., he assuming the obligation to plaintiff. T. and G. testified that there was no agreement between them in relation to the opera, T. merely loaning or advancing some of the money with which it was purchased by G. *Held*, that T. could not be held liable as a partner for a breach of the contract with plaintiff.

　　Laughlin and Patterson, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Edgar Atchison-Ely against Edward R. Thomas and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

R. W. Candler, for appellants.

James E. Chandler, for respondent.

INGRAHAM, J. The complaint alleges that prior to the 18th of August, 1903, one Sire was the owner of a certain opera called "The Mocking Bird"; that said Sire entered into an agreement with the plaintiff by which the plaintiff was to sing and act in said opera for a season of 35 weeks in 1903 and 1904, for which he was to receive the sum of $7,000 at the rate of $200 per week; that from

and after the 18th day of August, 1903, the defendants were part-
ners, and jointly interested in the ownership of the said opera, and
in the contracts thereafter mentioned, and in giving productions
of the said opera in various cities in the United States; that prior
to the 18th of August, 1903, the defendant, desiring to procure an
assignment of said contract between Leander S. Sire, the plaintiff,
and one Madeline Besley, procured from Sire an agreement by
which Leander S. Sire and Henry B. Sire transferred to the de-
fendant the said opera known as "The Mocking Bird" and all con-
tracts with artists and other persons necessary for or incidental
to the bringing out of such opera, and especially the said contracts
with the plaintiff and the said Madeline Besley; that this agree-
ment, at the special instance and request of both of the defend-
ants, was made and entered into nominally between the said Henry
B. Sire and the said Brady Greer, notwithstanding the defendants
were jointly interested in said contract as copartners; that at the
time of the purchase and sale of said opera the Sires, with the con-
sent of the plaintiff, duly assigned the contracts or agreements of
employment which the said Sires had with this plaintiff, and all
their rights thereunder, to the defendants, and that the defendants
thereupon and thereby assumed the completion and fulfillment of
said contract or agreement of employment with the plaintiff, and
especially agreed to pay the plaintiff for his services to be rendered
in said production of "The Mocking Bird" the sum of $7,000 in
weekly sums of $200 each; that the plaintiff had performed this
contract on his part up to and including the 21st day of November,
1903, when the defendants abruptly, and without any previous no-
tice to the plaintiff, and in violation of said agreement so assumed
by the defendants, closed the production of this opera, and dischar-
ged the plaintiff without reasonable cause; that the plaintiff had
received from the defendants on account of said contract of em-
ployment the sum of $2,000, leaving a balance due of $5,000, for
which the plaintiff demands judgment. The defendant Thomas
interposed an answer, which, in substance, is a general denial.
The defendant Greer interposed an answer admitting that he en-
tered into an agreement with the plaintiff to perform certain serv-
ices, alleging that there was a uniform custom in the theatrical
profession that a contract of the nature herein described could be
terminated by the defendant giving two weeks' notice of his inten-
tion to cancel said contract, and that in pursuance of said custom
the defendant terminated the contract.

The plaintiff called as a witness Henry B. Sire, who testified that
he saw the defendant Thomas in Saratoga in the summer of 1903,
and Thomas told Sire that he wished to purchase the opera called
"The Mocking Bird," and asked the witness what his brother Le-
ander would take for it; that the witness named $8,000, and Thom-
as said that that was more than he would give, that he would give
$6,000; that as he had already invested with Leander Sire about
$2,000 in another opera, if he took "The Mocking Bird" he wanted
to be relieved of that contract, and to be credited with that $2,000;
that Sire then said, "Do you want to give $4,000 and your interest

in 'The Four Leaf Clover' for 'The Mocking Bird'? to which Thomas replied, 'Yes, I want to give $4,000. I will give you $6,000 for the opera, less whatever I have invested in the other.'" The witness replied, "All right, I will do that; I will close it with you." Thomas then said: "Well, I will send the money, or arrange for the money in New York, and Mr. Greer will close it up for me. He will represent me in the transaction." Thomas then said: "Now, if I take this show, I want Mr. Edgar Ely. I understand your brother has a contract with him;" to which the witness replied, "Yes, sir; he has." The witness then told Thomas that the terms were $200 per week; that the agreement was not in writing. Thomas then said: "I want to make that as part of the bargain that if I take this opera I must have Mr. Ely, as he is a very important factor in the entertainment. * * * I also want to take over whatever people he [Leander Sire] has engaged for the opera." Greer was then spoken of, when Thomas said, "I think he is a bright young man, and I am going to give him an interest in this show, and he will be interested in it, and will undoubtedly take a great deal of interest in the show." The witness then testified that he saw Greer in New York, and told Greer that his brother, Leander, was satisfied to close up the matter on the terms agreed upon, and allow Thomas credit for what Thomas had up to that time invested in "The Four Leaf Clover," and the matter was then closed up between Greer and the witness. Greer paid the money, engaged the plaintiff and the other people that had been engaged by Leander, and the opera was turned over to Greer. The witness then testified that he told the plaintiff that the opera had been sold, and that Thomas would want him to fulfill his contract with Leander S. Sire for the balance of the season of 1903 and whatever there was of 1904. The witness also said that Thomas had told him at Saratoga that he (Thomas) would rather not be known in the transaction any more than possible. There was then introduced an agreement between the witness Henry B. Sire, of the first part, and Brady Greer, of the second part, which recited that Greer had entered into a contract or agreement with Sire for the production known as "The Four Leaf Clover"; and whereas, the party of the second part had paid to Leander S. Sire towards that production the sum of $1,864.50; and whereas, the party of the second part "desires to withdraw from said contract or agreement, and to purchase from Leander S. Sire his entire rights and interest in the production known as 'The Mocking Bird,'" to which the said Sire consented; therefore, in consideration of one dollar, Henry B. Sire sold, transferred, and set over to Greer, party of the second part, all his right, title, and interest, and the right, title, and interest of Leander S. Sire, in and to the production of the said play known as "The Mocking Bird," including the costumes, scenery, and all paraphernalia, composer's and author's rights, and everything appertaining to said production, for the sum of $6,000, which was to be paid, $1,864.50 theretofore paid by the party of the second part to Leander S. Sire for the production of "The Four Leaf Clover," which was accepted as part payment of the $6,000, and the balance

of $4,135.50 in cash on the signing and execution of the agreement; the party of the second part releasing the said Sire from the production of said play "The Four Leaf Clover." The agreement then provided that the party of the first part was to pay all sums due and owing to the composers of the music and authors of the libretto of the production of "The Mocking Bird," so the same is delivered to the party of the second part free and clear from any claims of royalties, and the party of the second part agreed to pay such royalties from the date of the first production by him at the rate under the contract heretofore made and entered into between Leander S. Sire and said composers and librettists. The party of the first part agreed to transfer to the party of the second part any and all contracts made with artists, chorus, and other people theretofore made by the said Sire for the production of "The Mocking Bird" for the season of 1903 and 1904 of the course, excepting the contract with Mabelle Gilman. The party of the first part further agreed to procure from Leander S. Sire the release of Madeline Besley, with whom he had a contract for her appearance in "The Four Leaf Clover," and consent to the employment by the party of the second part of Madeline Besley for the production of "The Mocking Bird," on condition, however, that the said Madeline Besley consented to such cancellation by the said Leander S. Sire and release him from all claims under such contract.

This agreement was executed by Henry B. Sire and Brady Greer, was under seal, and duly acknowledged. Greer paid to Sire the money mentioned in the contract by check. The plaintiff was then called, and testified that he had a contract with Sire to sing in "The Mocking Bird" for 35 consecutive weeks; that Sire told him that the opera had been sold to Thomas to star Miss Besley, and that he wanted the plaintiff especially; that Thomas had said that he would take over the contract, and Sire assured the plaintiff that everything would be all right; that the performance of the opera went on until the 21st of November, in Savannah, Ga., when it closed, and there was no further performance; that they owed the witness $1,100 in Savannah when he stopped; that Greer had assured the witness that when they arrived in New York they would get their money, and that six or seven weeks afterwards he received the $1,100.

The cause of action thus sought to be enforced is one against these defendants as partners, or jointly interested in the production of this play. The plaintiff had a contract with Sire, who was the owner of the play, by which Sire agreed to pay him $7,000 for his services for 35 weeks as a performer in the opera. The only evidence of any connection that Thomas had with the production of this opera was his statement to Sire that he wished to purchase the play and to secure the services of the plaintiff in producing it, and that at that time Thomas said that he intended to give to Greer an interest in the play. The formal contract, however, by which the opera was transferred, was with Greer only. The play was transferred to Greer, and by such transfer Greer assumed the obligations of Sire in relation to the production. Thomas was not

a party to this agreement, had no concern with it, was not liable under it, and there is no evidence that this intention of Thomas, assuming that Sire's statement was true, was ever in fact carried out, that he ever produced the play, that he ever gave Greer an interest in it, or that there was any understanding or agreement between them in relation to it. Both Thomas and Greer swore that there was no such agreement; that Thomas was never personally, or jointly with Greer, interested in the opera; Thomas merely loaning or advancing some money to Greer to purchase it from the Sires. If this opera had been profitable, upon this evidence Thomas certainly could not have maintained any claim for the profits, or for any interest in production. He did not hold himself out as jointly interested in its production. The title to the opera was vested in Greer, and the fact that the conveyance to him was under seal, and the obligations assumed by Greer were those contained in this sealed instrument, precludes any claim against Thomas as an undisclosed principal or undisclosed partner. Whatever Thomas' intentions were at Saratoga, there is no evidence that such intention was carried out. The final arrangement that was made was a transfer of the opera and the personal property necessary to produce it to Greer, who thereupon became its owner, and entitled to any profit from it, and assumed the obligation of Sire; but Thomas cannot be held as a partner or joint owner of the opera, or in any way interested in it, in view of the character of the instrument which transferred it to Greer and the obligations that Greer assumed under that instrument. Nor did Thomas directly assume any obligation to the plaintiff. He told Sire that if he purchased the opera he should want the services of the plaintiff, but the evidence is that he did not purchase the opera, and that, whatever his intention was when he had this conversation with Sire at Saratoga, it was never carried out. There could undoubtedly have been a copartnership to produce this play, the legal title to which was in Greer, but to establish such a copartnership and make Thomas liable as jointly interested with Greer in the production of the opera there must be some evidence of an agreement between Greer and Thomas from which a joint interest in the play itself and its production could be established; and it is in this aspect of the case, as it seems to me, that the evidence entirely fails to sustain any cause of action based upon an agreement between Thomas and Greer to jointly produce this play. As before stated, such a joint enterprise cannot be assumed from anything that happened prior to the execution and delivery of the transfer from the Sires to Greer. That instrument speaks for itself, and by it Greer became the owner of the play, and the obligations that Greer assumed by that instrument are his individual obligations, and there is nothing to show that Thomas was an undisclosed principal by virtue of anything contained in the instrument; and there is no evidence to show that as between Thomas and Greer there was any agreement, express or implied, which would make them jointly interested in the production of this play, or jointly responsible for the contracts made to perform it; and in the absence of evidence to show that

there was a joint interest, or an agreement by which Thomas and Greer became jointly interested in the performance or the adventure, I do not think this judgment can be sustained. The cause of action is not based upon any assumption by Thomas individually of Sire's contract with the plaintiff, and whether or not there would be evidence to sustain such a cause of action it is not necessary now to determine. The action is against the defendants as copartners or joint adventurers, and, as the evidence fails to show that there was any such partnership or joint adventure, Thomas is not liable for a breach of contract made by Sire with the plaintiff which was transferred by Sire to Greer by an instrument under seal, and which was broken by Greer.

I think the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. (dissenting). The plaintiff is a professional singer, and brought this action to recover of the defendants as copartners in the ownership and production of the opera known as "The Mocking Bird" for a balance of salary pursuant to a contract of employment to act and sing a part in that production. Prior to the month of August, 1903, Leander Sire owned the opera, or the right to produce it, and the plaintiff was employed by him to take one of the parts at a salary of $200 per week for a period of 35 weeks commencing on the 15th day of September thereafter. On the 18th day of August, 1903, Sire duly assigned in writing his right, title, and interest in and to the production to the defendant Greer. The plaintiff gave evidence tending to show that negotiations which resulted in this assignment were conducted by Henry B. Sire, representing the assignor, with the defendant Thomas, who was the real party in interest as purchaser; that Thomas made it a condition of the purchase, in the parol negotiations, that he take over the contract with the plaintiff, and that the plaintiff should continue in the cast, and authorized Sire to represent him in having this understanding with the plaintiff; that Thomas stated to Sire, concerning the defendant Greer, who was to be his manager, in answer to an inquiry by Sire concerning Greer's competency as a manager, that Greer had not had "a great deal of experience, but I think he is a bright young man, and I am going to give him an interest in this show, and he will be interested in it, and will undoubtedly take a great deal of interest in the show"; that the terms of the sale were agreed upon between Thomas and Sire at this interview; that Thomas stated to Sire that he preferred not to be known in the matter, and that he would send the purchase money to Greer, who would represent him in consummating the purchase; that the purchase was consummated upon the terms thus agreed upon, which appear to have been understood by Greer when Sire called upon him after seeing Thomas; that Sire informed the plaintiff that Thomas was about to purchase the

opera, and desired to take over the plaintiff's contract, to which the plaintiff assented; that the opera was subsequently presented during part of the period for which plaintiff was employed, and then discontinued; that the plaintiff performed the part to which he was assigned as long as the opera was presented, and remained ready to perform and presented himself for performance until he was released and obtained other similar employment; that the opera was presented under the name of the defendant Greer as manager, and that the latter admitted that he had an interest therein. The plaintiff presented other evidence tending to show that the defendant Thomas, during one of the rehearsals of the opera, admitted to one of the actors in the presence and hearing of others that he owned the show, and was responsible for the payment of the salaries. The defendant Thomas testified that he had no interest in the opera, or in its production, other than that he loaned the money for the purchase and presentation thereof to the defendant Greer, and expected to be paid out of the profits. The defendant Greer admits that he was interested as owner; but claims that he was the sole owner, and that the only relation existing between himself and Thomas was as claimed by the latter. It does not appear that Sire informed the plaintiff at the time he was employed in behalf of Thomas that Greer had an interest in the opera, or in its production, nor does it appear that the plaintiff performed any services relying upon any representation that Greer had such an interest.

It is contended by the appellants, therefore, that it was incumbent on the plaintiff to show an actual partnership between them in the presentation of the opera in order to render them liable as partners; that being the theory of the complaint. I am of opinion that this is a correct proposition of law. If the appellants had held themselves out as partners, and the plaintiff had accepted the employment relying upon authorized representations, that would be sufficient, regardless of whether or not they were in fact partners; but that is not this case. He accepted the employment and rendered the services on the representation and in the belief that Thomas was the sole owner; and therefore, in order to recover against the appellants jointly as partners, it was incumbent upon him to give evidence tending to show that they were such in fact. I am of opinion, however, that the evidence tends to establish a partnership, and is sufficient to sustain the verdict. As has been seen, there is no question but that the appellant Greer had an interest, both in losses and profits. The testimony of Sire and the other testimony presented by the plaintiff concerning the admissions of Thomas likewise show that he had an interest in both profits and losses. The declaration of Thomas concerning the interest that he was to give Greer indicates that it was to be a joint interest with himself as partner, although not an equal interest, and the admission of Greer that he had an interest indicates that his interest was such that it was his duty to contribute in part toward the expenses of presenting the production. Thomas did not take any note or other evidence of indebtedness for the large

amounts which he advanced for the purchase and production of the opera, as he would likely have done had the moneys been loaned. I am of opinion, therefore, that the jury were warranted in finding that the appellant Thomas was the principal owner, but that the appellant Greer was a part owner with him in the production of the opera, at least, if not in the right to produce it.

It follows, therefore, that the judgment and order should be affirmed, with costs.

PATTERSON, J., concurs.